**TENNESSEE GAS TRANSMISSION CO. v. BAYLES.**

**Civ. A. No. 2261.**

District Court, W. D. Louisiana, Monroe Division.

Nov. 6, 1947.

Shotwell & Brown and Jas. H. Trousdale, Jr., all of Monroe, La., and Baker, Botts, Andrews & Walne and J. C. Hutcheson, III, all of Houston, Tex., for plaintiff.

Dhu Thompson, of Monroe, La., for defendant.

DAWKINS, District Judge.

Plaintiff sought and was granted a restraining order to prohibit defendant from further interfering with the construction of an additional pipe line over his property,

allegedly under the terms of the contract between the parties permitting the construction. It was charged that he had caused the arrest of plaintiff's employees as trespassers. Defendant has moved to set aside the restraining order, and in answer to the application for a preliminary injunction, asks its dismissal on substantially the same grounds. After hearing, at the suggestion of the court, to avoid repeated extensions of the restraining order, due to the fact that the judge was busily engaged with other matters, it was agreed that it should remain in effect until the issue could be passed upon, all without prejudice to the rights of the parties. As usual, the application and motions were submitted on the pleadings and affidavits rather than oral testimony, and on briefs, which have been filed.

The case involves the interpretation of a written contract and defendant's counsel concedes that it turns upon the claim of ambiguity. Under its terms, defendant purported to convey a right of way for the construction of pipe lines over his lands. Pertinent provisions are as follows:

" * * * Bayles * * * Grantor for $5.00 * * * does grant * * * sell and convey unto Tennessee Gas and Transmission Company * * * a right of way and easement for the purpose of laying, constructing, maintaining, operating, altering, replacing and removing pipe lines * * * for the transportation of oil, gas, petroleum products or any other liquids, gas, or substance, which can be transported through a pipe line, and of erecting, maintaining and removing, a line of poles and appurtenances thereto for the operation thereof of telephone and telegraph wires, *the Grantee to have the right to select, the route under, upon, and over, and through the lands of Grantor. * * * *"

"The Grantee, by the acceptance hereof, agrees to pay * * * $1.00 per lineal rod of right of way before laying the first pipe line thereon, which payment shall also cover the right of erecting, maintaining and removing a line of poles and appurtenances thereto for the operation thereon of telephone and telegraph wires, and in case no pipe line is laid thereon within two years from date hereof then such payment per lineal rod shall be made within such (2) two years or this grant shall thereupon cease and determine."

"There is also hereby granted the right to lay, construct, maintain, operate, alter, repair, remove, change the size of and replace at any time *one or more additional lines* of pipe adjacent to and parallel with the line above mentioned, upon the payment for each additional line so laid of the price per lineal rod above stipulated. The Grantee, its successors and assigns, are hereby expressly given and granted the right to assign this right of way and easement, or any part thereof, or interest therein, and the same shall be divisible among two or more owners, as to any right or rights created hereunder, so that each assignee or owner shall have the full rights and privileges herein granted, to be owned and enjoyed either in common or severally.

"The Grantee shall have all other rights and benefits necessary or convenient for the full enjoyment or use of the rights herein granted, including, but without limiting the same to, the free right of ingress and egress over and across said lands to and from the said right of way and easement.

\* \* \* \* \* \*

"It is mutually understood and agreed that this right of way grant as originally written covers all the agreements and stipulations between the parties and that no representation or statements verbal or written have been made modifying, adding to, or changing the terms of said original right of way agreement." (Emphasis by the writer.)

Defendant filed a motion to dissolve the restraining order and later a return to the application for preliminary injunction, and on October 1st, a motion to dismiss. In the meantime plaintiff had filed a "motion to strike defendant's motion to dissolve" and another motion styled "Answer to Motion to Dissolve or to Modify Temporary Restraining Order * * *."

The matter involved is the extent of the rights of way granted. The problem must be approached in the light of the nature of the subject matter with which the parties were dealing. Plaintiff held from the Federal Power Commission a certifi-

cate of necessity and convenience permitting it to construct interstate pipe lines through several states from Texas to West Virginia and was seeking rights of way over lands through which these lines were projected. In the beginning plaintiff and the land owners were at liberty, of course, to make, within the law, such contracts as were mutually satisfactory. Courts do not make contracts for parties but interpret them after they have been made.

**■** Notice can be taken, I think, of the fact that pipe lines carrying natural gas in quantities sufficient to supply commercial and domestic demands at such great distances, may range in diameter from 6 inches up, and in this instance, it is alleged, that the diameter will be 26 inches. It is further evident that very high pressure will be necessary to force the gas to its destination. Danger from bursting or explosion increases with the size of the pipe, quantity and pressure of the gas. Those engaged in and experienced in the business, and who are best qualified to determine methods of construction, have testified in affidavits, that it would be dangerous to place these pipe lines closer together than 50 feet. Defendant has offered nothing to dispute this. He had the right before signing the contract, to make such inquiry and inform himself of these facts as he deemed proper, and must be presumed to have done so to the extent he thought necessary before giving consent to it as made. He is also conclusively presumed to have read and understood the contract before he signed it, including the last paragraph, quoted above excluding any agreement not expressed therein. Boagni v. Fouchy, 26 La. Ann. 594; Allen, West and Bush v. Whetstone, 35 La.Ann. 846; Murphy v. Hussey, 117 La. 390, 41 So. 692; Upton v. Tribilcock, 91 U.S. 45, 50, 23 L.Ed. 203.

**■■** As stated by defendant's counsel, fraud or error, properly alleged and proven, vitiate everything. Let us see if the allegations of his pleadings can be construed as charging either fraud or error as required to justify the introduction of parole evidence as against the provisions of the contract. The answer to the rule says that he "signed the right of way agreement * * * upon and being informed by the agent and representative of the defendant who carried on said negotiations that the total width of the right of way covered by said contract was 50 feet", and that, he, never intended to grant more. Further, that similar representations were made to other property owners and in other cases the rights of way were fixed at 50 feet. For these reasons, it is stated, plaintiff is "estopped to claim more than 50 feet and defendant pleads fraud and error based upon its (plaintiff's) interpretations and statements made to him and other landowners as to the total width of the right of way being secured and the interpretation placed thereon by such agents and representatives * * *".

These allegations must be read in connection with the provisions of the contract above quoted and referred to, and when this is done, they mean no more than a claim that there was an oral agreement, in addition to and beyond that which is expressed in the contract, this in the face not only of an expressed codal provision against it, but a clear declaration in the contract itself. Louisiana Civ.Code, Art. 2276 provides: "Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said be fore, or at the time of making them, or since."

**■** Fraud is never presumed but it must be alleged, not as a legal conclusion, but as facts, the proof of which, would destroy the principal motive for making the contract. In this instance, the written agreement not only provided for a right of way, sufficient in the light of experience of those engaged in the gas pipe line business, for a single large line, *but for others*, as needs and conditions might require, and at the same time, fixed the rate of compensation to be paid to the land owner for such additional rights of way, at the same as for the first. Defendant was bound to take notice of those stipulations, which he signed, and it is not permissible for him to say, that although he signed and agreed thereto, nevertheless it was understood that no more than 50 feet in width in right of way would be taken, regardless of the needs of plaintiff for the laying of additional lines. To permit this, would be to do exactly

what Article 2276 of the Code prohibits. Such contention is in conflict with the express provisions of the contract for the building of additional lines. Contracts with other land owners have no relevancy here unless and until facts are alleged, which clearly establish fraud or error. Defendant could have refused to make an agreement or he could have insisted that 50 feet be written in and in that event plaintiff would have been driven to the necessity of exercising the powers of eminent domain, if permitted to do so, under the powers of its charter and the law applicable thereto, or to agreeing to defendant's terms. We have to take the contract as made and not as either party would like it to be. It is the law governing their rights and can not be voided except upon a clear showing of fraud and error.

■■■■ Counsel for defendant argue vigorously that the word "adjacent" has no fixed meaning. However, it seems to be well settled that the word must be construed in the connection in which it is used. It can hardly be denied that the defendant and plaintiff could make the contract, as was done here, permitting the former to select the location and route of the line, without describing it specifically in the deed, and, when this line was selected and the price paid, the contract became as binding in that respect as if the right of way had been specifically described. Otherwise, the language must be construed in connection with all other provisions, which in this instance, clearly indicated, that after selecting the location and route, the plaintiff was to have the privilege of using additional space for the laying of other lines as conditions might require. As heretofore stated, in this contract the word "adjacent" meant that the other lines would be located on the property in such close proximity to the first as would be feasible and safe in this particular undertaking. The only outside evidence that is pertinent is that which deals with the reasonable safety of the location of other lines. The defendant, of course, was entitled to offer any contradictory evidence tending to show that the quantity claimed by the plaintiff was not necessary, but he can not change or alter the contract so as to have it make an entirely different contract to that which he signed. Courts are not concerned with the wisdom or lack of wisdom exercised by parties in making their contracts if they are about matters and within terms which are not prohibited by law. See 28 C.J.S., Easements, § 77; Babler v. Shell Pipe Line Corp., D.C., 34 F.Supp. 10; Fazende v. Morgan, 31 La.Ann. 549; Hafner Mfg. Co. v. Lieber Lumber & Shingle Co., 127 La. 348, 53 So. 646; Colorado Milling & Elevator Co. v. Rapides Grocery Co., La.App., 142 So. 626.

It is the view of this court that there is no ambiguity in the contract, within the legal meaning of that term as applied to this particular type of contract. The defendant is to be commended for appealing to lawful authorities of the Parish instead of attempting to take the law into his own hands in preventing the going upon his property by the plaintiff. However, since it has been concluded that there is no ambiguity in the contract, the institution of criminal prosecution is sufficient ground upon which to warrant the issuance of a preliminary injunction. The preliminary writ will be granted.

Proper decree should be presented.