170 So.2d 802

Artemus TRAYWICK

v.

TRANSCONTINENTAL GAS PIPE LINE CORPORATION.

5 Div. 790.

Supreme Court of Alabama.

Jan. 7, 1965.

Johnston, Johnston & Courtney, Mobile, for appellee.

L. Lister Hill and Godbold, Hobbs & Copeland, Montgomery, for appellant.

GOODWYN, Justice.

Appeal by plaintiff from judgment of nonsuit induced by adverse rulings on pleadings (Code 1940, Tit. 7, § 819) in a statutory action of ejectment (Code 1940, Tit. 7, § 938; § 223, Form 32) brought against appellee to recover possession of certain lands in Coosa County. River Construction Corporation, originally a co-defendant, was stricken by amendment and is not a party to this appeal.

The complaint, as amended, seeks possession of the following land, viz: NW ¼ of the SE ¼, less 6 acres on the North side thereof, and the E ½ of the NE ¼, all in Sect. 10, Tp. 21 North, R. 17 East, in Coosa County, Alabama.

Appellee filed the following plea to the complaint, viz:

"That this Defendant, for a valuable consideration, purchased easements and

rights as shown by the right of way agreements from the Plaintiff and his wife, copy of such right of way agreements being attached hereto and made a part thereof; that this Defendant claims the rights and easements granted by said right of way agreements and disclaims any other interest in the lands which are the subject matter of this suit."

Two right of way agreements are attached to and made a part of the plea. Both were executed on March 17, 1949. One, reciting a paid cash consideration of $100, grants a right of way across the E ½ of the NE ¼ of Sect. 10. The other, reciting a $5 cash consideration, grants a right of way across the remainder of the land sued for. In other respects, the agreements are identical. They "grant, bargain, sell and convey" to appellee, its successors and assigns, "a right of way and easement for the purposes of laying, construction, maintaining, operating, repairing, altering, replacing and removing pipe lines (with valves, regulators, meters, fittings, appliances, tie-overs, and appurtenant facilities) for the transportation of gas, oil, petroleum products, or any other liquids, gases, or substances which can be transported through a pipe line, the Grantee to have the right to select the route, under, upon, over, through and across the lands of Grantor," described in the respective agreements.

The agreements also contain the following pertinent provisions, viz:

"There is included in this grant the right, from time to time, to lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace one or more additional lines of pipe approximately parallel with the first pipe line laid by Grantee hereunder; but for any such additional line so laid the Grantee shall pay Grantor, or the depository hereinafter designated, a sum equivalent to One Dollar ($1.00) per lineal rod of such additional line, or such proportionate part thereof as Grantor's interest in said lands bears

to the entire fee, within sixty (60) days subsequent to the completion of the construction of such additional line.

"The Grantee shall have all other rights and benefits necessary or convenient for the full enjoyment or use of the rights herein granted, including, but without limiting the same to, the free and full right of ingress and egress over and across said lands and other lands of the Grantor to and from said right of way and easement, and the right from time to time to cut all trees, undergrowth and other obstructions that may injure, endanger or interfere with the construction, operation, maintenance and repair of said pipe lines. The Grantee shall have the right to assign this grant in whole or in part.

"TO HAVE AND TO HOLD said right of way and easement unto said Grantee, its successors and assigns, until such first pipe line be constructed and so long thereafter as a pipe line is maintained thereon; and the undersigned hereby bind themselves, their heirs, executors and administrators (and successors and assigns) to warrant and forever defend all and singular said premises unto the Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

\*        \*        \*        \*        \*        \*

"Any payment hereunder may be made direct to the Grantor, or, at the option of Grantee, such payment may be made by depositing the same in The First National Bank at Wetumpka, Alabama, to the joint credit of Grantor, said bank, and its successors, being hereby designated as the depository for such purpose, irrespective of any future change in the ownership of the lands hereinabove described. \* \* \*"

Appellant demurred to the plea on the ground that "it affirmatively appears from

said plea that the right of way agreements therein alleged, insofar as they purport to grant to the said defendant the right or option to lay or construct one or more additional lines of pipe under, upon, over, through or across the lands of plaintiff from time to time subsequent to the execution and delivery of the alleged agreements, violate the Rule against Perpetuities and are therefore void and invalid and are not a defense to this action."

The demurrer to the plea was overruled.

Appellant then filed three replications to the plea, as follows:

1. Joined issue on the plea.

2. "That in, to-wit, November 1961 said defendant did lay or construct a pipe line across the lands of plaintiff described in plaintiff's complaint, as amended, that the said pipe line was the third such pipe line laid or constructed by said defendant across said lands, that more than sixty (60) days had expired subsequent to the completion of the construction of said pipe line before the filing by plaintiff of his said complaint in this cause and that the said defendant had not upon the filing of said complaint or prior thereto paid to plaintiff or deposited in the First National Bank at Wetumpka, Alabama, a sum equivalent to One Dollar ($1.00) per lineal rod of such said pipe line."

3. The same as 2 except alleging, in effect, that appellee had not paid or deposited the required $1 per lineal rod at the time of filing the replication (February 21, 1963).

Appellee demurred to replications 2 and 3, separately and severally. The substance of the demurrer is that the replication does not confess or avoid the plea and that the failure to pay the $1 a lineal rod is not sufficient ground to cancel or void the agreements. The demurrer was sustained.

Appellant, because of the adverse rulings on the demurrers, moved for a nonsuit and a judgment of nonsuit was rendered. This appeal is from that judgment.

We have concluded that the rulings on the demurrers were without error and that the judgment appealed from is due to be affirmed.

The common law rule against perpetuities, applicable in this jurisdiction (Code 1940, Tit. 47, § 16), has been stated as follows:

"[N]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." See: Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 465, 34 So.2d 835, 841; Ramage v. First Farmers & Merchants Nat. Bank of Troy, 249 Ala. 240, 245, 30 So. 2d 706; Crawford v. Carlisle, 206 Ala. 379, 386, 89 So. 565; Gray, The Rule Against Perpetuities, 4th Ed., § 201, p. 191.

This "Rule" is referred to sometimes as the rule against remoteness of vesting. "The purpose of the 'Rule' is to prevent property from being inalienable after a reasonable time, and to that end * * estates must become vested within a certain time * * *." Edward W. Faith, "Perpetuities," 2 Ala. Law Journal 172 (May, 1927). As said in Lyons v. Bradley, 168 Ala. 505, 513, 53 So. 244, 247, per Sayre, J.: "Vested interests are not subject to the rule against perpetuities. Gray, § 205 et seq. The rule is directed against the creation of remote contingent interests —the creation of such interests at a time beyond the limit fixed by the rule." See, also: Rountree v. Richardson, 268 Ala. 448, 452, 453, 108 So.2d 152; Dozier v. Troy Drive-In-Theatres, Inc., 265 Ala. 93, 104–105, 89 So.2d 537; Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 466, 34 So.2d 835, supra.

In the Rountree and Dozier cases it was held that the rule against perpetuities does not apply when "both the grantor and grantee have an interest in the fee which they can convey and thereby relieve the property of the exemption from trade which the rule seeks to prohibit." We view the

right of way instruments as conveying to appellee a presently vested interest in the fee; thereby making it possible for appellee and the other owners of fee interests in the lands to convey the full fee by joining in a conveyance of such fee.

Although this court has not considered instruments like these, similar instruments have been before other courts which have generally held them not to be obnoxious to the rule against perpetuities. See: Sorrell v. Tennessee Gas Transmission Company, (Ky.) 314 S.W.2d 193; Texas Eastern Transmission Corporation v. Carman, (Ky.) 314 S.W.2d 684; Vandiver v. Transcontinental Gas Pipe Line Corporation, 222 F. Supp. 731 (1963); Hamilton v. Transcontinental Gas Pipe Line Corp., 236 Miss. 429, 110 So.2d 612; Ashcot, Inc. v. Texas Eastern Transmission Corporation, 241 Miss. 392, 129 So.2d 405; Baker v. Tennessee Gas Transmission Company, 194 Tenn. 368, 250 S.W.2d 566; Crawford v. Tennessee Gas Transmission Company, Tex.Civ.App., 250 S.W.2d 237; Caruthers v. Peoples Natural Gas Company, 155 Pa.Super. 332, 38 A.2d 713; Restatement of the Law, Property, § 399, p. 2341; Gray, The Rule Against Perpetuities, 4th Ed., § 279, p. 309. These authorities are to the effect that such instruments convey presently vested easements as distinguished from options to acquire additional servitudes at indefinite future times.

We think the following from Sorrell v. Tennessee Gas Transmission Company, supra, very adequately disposes of the question of the instruments violating the rule against perpetuities, viz:

"Although the type of agreement before us has never been passed upon in this jurisdiction, instruments practically similar in content have been upheld by other courts. The case of Caruthers v. Peoples Natural Gas Co., 155 Pa. Super. 332, 38 A.2d 713, 714, 162 A.L.R. 587, involved a right of way contract which granted unto the gas company the authority to construct a pipe line across property later acquired by one Carroll Caruthers and, among other things, provided that the gas company might 'at any time lay an additional line of pipe alongside of the first line'. One of Caruthers' predecessors in title permitted the first line to be built in 1906 pursuant to the contract. In 1940, the gas company, without Caruthers' knowledge or consent, commenced work preparatory to installing a second line. An injunction proceeding was instituted to halt the gas company's activity. The same contention was made there, as is now posed here, that the instrument did not bestow upon the gas company a vested easement but merely an option to purchase one at an indefinite future time. The Pennsylvania court had no difficulty in finding that the instrument in unambiguous terms conveyed a *presently vested easement,* as distinguished from an option to acquire future additional servitudes.

"In dealing with this identical question, the Restatement of Law of Property, Chapter 27, Section 393, Comment j, page 2321, has this to say: 'Frequently the owner of land, in granting an easement or profit, requires that the grantee make payments of money at future dates, the time and amount of such payments being determined by the number of trees cut from time to time, or by the extent of the land utilized in the development of the easement or profit. To the extent that such agreement is found to constitute the creation of present rights in the servient land with payment for some of these rights postponed, no "option" is sought to be created * * *.'

"The right or privilege granted under the terms of the instant agreement is much broader than the easement construed in the Caruthers case, cited above. That case dealt with an easement that required each additional line to be laid 'alongside' any other lines previously laid, whereas the agreement in the case at bar allows additional lines to be laid across any portion of the land.

An agreement identical with the one under consideration is set forth in Baker v. Tennessee Gas Transmission Co., 194 Tenn. 368, 250 S.W.2d 566, 569, and that case in upholding the right of the gas company to construct additional lines under the agreement characterized the authority to do so as 'the right to expand the servitude created by the easement.' See also Crawford v. Tennessee Gas Transmission Co., Tex.Civ.App., 250 S.W.2d 237; Tennessee Gas Transmission Company v. Bayles, D.C.La., 74 F.Supp. 258; Lone Star Gas Co. v. Childress, Tex.Civ.App., 187 S.W.2d 936; Babler v. Shell Pipe Line Corporation, D.C.Mo., 34 F.Supp. 10.

\*   \*   \*   \*   \*   \*

"It is next maintained the agreement in controversy violates the rule against perpetuities. This rule is in these words, as set forth in Gray's The Rule against Perpetuities, Section 301 (4th Ed.) : 'No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.' It is apparent from a casual reading of this language that the rule is not involved with the possession and enjoyment of an interest but with its vesting. As has been shown, the instrument with which we are concerned grants present rights and subjects the land described therein to an immediate servitude. It is true that the owner of the easement is not limited as to the time in which it may make full use of its rights. This, however, does not mean that its rights have not vested. Many types of easements which are granted in perpetuity are not exercised immediately, or within any limited time; yet it has never been suggested that the non-use of the rights granted, either in whole or in part, affects their validity. See Restatement of the Law of Property, Chapter 27, Section 399, Comment g, page 2341. Nor does the circumstance that a payment is to be made when the easement is used prevent it from being a present right. See Gray, supra, Section 279.

"The same volume, chapter and section of Restatement on page 2341 observes that the expansible aspect of an easement such as the one under scrutiny ' \* \* \* can be thought of as the progressive utilization, in its entirety, of an interest fully created at the beginning, or as to the creation of an original less inclusive interest to which new rights are added from time to time. The former of these two approaches facilitates the excepting of all such arrangements from the application of the rule against perpetuities \* \* \* .' "

Appellant further insists that the trial court erred in sustaining appellee's demurrers to his replications 2 and 3 to appellee's plea. The question presented is whether the failure of appellee to pay or deposit the $1 per lineal rod for each additional pipe line, as provided for in the right of way agreements, is ground for cancelling or voiding said agreements. One answer to this is found in the following from Caruthers v. Peoples Natural Gas Co., 155 Pa. Super. 332, 38 A.2d 713, 715, supra, with which we are in accord, viz.:

"Leading text writers agree that the rule against perpetuities is applicable to easements, Gray, Rule against Perpetuities, 4th Ed., §§ 314–316; Lewis on Perpetuities, pp. 619, 620; Foulke, Perpetuities in Pennsylvania, § 366. But a presently vested expansible easement must be distinguished from an option to acquire future additional servitudes. The present grant of a right to cut timber or mine coal or make use of a right of way, with a provision for payment if and when the easement is expanded, does not run counter to the rule. On the other hand, a grant subject to a condition precedent which may or may not occur within the maximum period of the rule is void. \* \* \*

"The question is whether the provision in the greement of 1906 that $3

per rod 'shall be paid the grantors before entry on premises is made to pay the first or additional line' is a condition precedent to the grant or whether it merely stipulates the time, viz., in advance, when payment is to be made. We think it is the latter. [It is to be noted that in the case now before us payment is to be made within 60 days after completion of each additional line.]

"If it had been the intent of the parties that advance payment be a condition precedent to the grant of the right, it would have been a simple matter to have made this clear by tying it in with the words of the grant. If the agreement had provided: 'The Peoples Natural Gas Company is hereby granted, conditional upon the payment in advance of three dollars ($3.00) per rod of pipe line to be laid, the right of way to lay, maintain, operate, etc.,' there would be presented a case which clearly violated the rule against perpetuities. See Barton v. Thaw, 246 Pa. 348, 92 A. 312, Ann.Cas.1916D, 570. But the grant of the right of way, both as to the original and the additional line, is absolute. And in holding that the subsequent provision (see Calder's Estate, 343 Pa. 30, 33, 21 A.2d 907) for payment in advance of entry upon the premises is not a condition precedent to the right granted (Threlkeld v. Inglett, 289 Ill. 90, 96, 124 N.E. 368, 370; Beloit Bldg. Co. v. Quinn, 145 Kan. 507, 66 P.2d 549), we are helped by the well-settled rule of construction that vested interests are favored as against contingent: Riverside Tr. Co. v. Twitchell, 342 Pa. 558, 564, 565, 20 A.2d 768. [See: Stratford v. Lattimer, 255 Ala. 201, 204, 50 So.2d 420; Allen v. Maxwell, 249 Ala. 655, 660, 32 So.2d 699; McCurdy v. Garrett, 246 Ala. 128, 129, 19 So.2d 449; George v. Widemire, 242 Ala. 579, 585, 7 So.2d 269; Duncan v. De Yampert, 182 Ala. 528, 532, 62 So. 673; Graves v. Wheeler, 180 Ala. 412, 417, 61 So. 341.]"

Another answer to the question is the rule that failure to pay the consideration recited in a deed is not ground for cancelling the deed. See: Hanners v. Hanners, 262 Ala. 143, 145, 77 So.2d 484; Wilfe v. Waller, 261 Ala. 436, 437, 74 So.2d 451; Wells v. Wells, 252 Ala. 390, 391, 41 So.2d 564; Wells v. Wells, 249 Ala. 649, 651, 32 So.2d 697.

Our view is that appellee, upon receiving the right of way agreements, acquired a vested interest in appellant's land with the right to lay a pipe line in and across said land, and with the right also to lay, from time to time, additional pipe lines across it; that the provision for payment of $1 per lineal rod within 60 days after completion of any additional line was not a condition of the granting of the easement but simply fixed the time for making payment; and that appellee's failure to pay said additional sum has not rendered inoperative the grant of either easement and is not ground for cancelling either right of way agreement. Accordingly, the judgment appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.